UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELISSA RIVERA AND RICARDO SILVA, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-14005** |
| **JENNIFER ROBINSON, ET AL** | **SECTION: "S" (4)** |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that plaintiffs' **Motion to Allow the Golden Rule** (Rec. Doc. 123) is **DENIED** as premature;

**IT IS FURTHER ORDERED** that plaintiffs' **Motion in Limine** to Exclude Improper Inflammatory Terminology at Trial by Defense Counsel (Rec. Doc. 124) is **DENIED** as moot with respect to the terms "bullet bike" and "donor cycle", **DENIED** with respect to the term "zipper bike", and **DENIED** as premature with respect to the term "crotch rocket";

**IT IS FURTHER ORDERED** that plaintiffs' **Motion in Limine** to Suppress Statements, Testimony, and Affidavits of Witnesses Not Present at the August 25, 2018 Accident (Rec. Doc. 125) is **DENIED**;

**IT IS FURTHER ORDERED** that defendants' **Motion in Limine** to Exclude Plaintiffs' Exhibit P-40 (Rec. Doc. 128) is **GRANTED in part and DENIED** in part, and exhibits P-40a, P-40c and P-40cc, P-40d and P-40dd, and P-40f and P-40ff are admissible. P-40aa is admissible provided a stipulation can be reached.

BACKGROUND

This action stems from a motorcycle-automobile accident that occurred on August 25, 2018. Plaintiffs' son, Ricardo Silva, Jr. ("Silva"), was driving his motorcycle southbound on Highway 1082 in Covington, Louisiana; defendant Jennifer Robinson ("Robinson") was driving her automobile northbound. Despite the fact that they were approaching one another head on, Robinson did not see Silva, and made a left turn into her driveway. Silva collided with the rear right side of Robinson's vehicle. Silva was transported by ambulance to St. Tammany Parish Hospital, where he died approximately one hour later.

Silva's parents filed the instant wrongful death suit, alleging that Robinson's negligence caused the accident because she was driving aggressively, was inattentive, and was distracted by her cell phone and entertainment system, and later amended their complaint to further allege that Robinson's medication may have played a role in the accident. In their answer to the complaint, defendants contend that Silva contributed to this accident in that he created a sudden emergency, failed to maintain reasonable vigilance, failed to utilize the last chance to avoid the accident, and drove at an unreasonably dangerous rate of speed under the circumstances.

In the present motions in limine, both parties have raised issues concerning the admissibility of certain evidence and arguments at trial. The court addresses them in turn below.

DISCUSSION

1.   **Motion to Allow Golden Rule Argument**

"Golden Rule" arguments are arguments which ask the jurors to stand in the shoes of a party. Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 180 (5th Cir. 2005). "A plea to the

jury members to 'put themselves in the shoes of the plaintiff and do unto him as they would have done unto them under similar circumstances ... [is] improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than the evidence.'" Id. (quoting Ivy v. Sec. Barge Lines, Inc., 585 F.2d 732, 741 (5th Cir.1978). However, the Fifth Circuit has also held that "[t]he use of the Golden Rule argument is improper only in relation to damages. It is not improper when urged on the issue of ultimate liability." Stokes v. Delcambre, 710 F.2d 1120, 1128 (5th Cir. 1983)(citing Burrage v. Harrell, 537 F.2d 837 (5th Cir.1976)). In Stokes, the plaintiff was assaulted while being held in Vermilion Parish jail, and the court found that it was not impermissible for counsel, in his closing argument, to ask the jury to put themselves in Stokes' place to determine whether his fears and resultant failure to request help were reasonable, because "[t]his determination went to the ultimate question of liability, not the amount of damage." Id. Thus, the permissibility of Golden Rule arguments turns on whether they are directed to the reasonableness of a parties' actions (i.e. liability), rather than how a juror would wish to personally be compensated under similar circumstances.

     In the case before the court, counsel for plaintiffs argues that he does not intend to make an impermissible damages-oriented Golden Rule argument; however, counsel has not disclosed precisely what permissible Golden Rule argument he plans to make. Accordingly, the court is not equipped to rule definitively on whether his proposed argument is allowed, although to the extent it is directed to the question of liability rather than damages, and is otherwise admissible, it will be allowed. Accordingly, plaintiffs' motion to allow Golden Rule argument is denied as premature.

**2.      Motion in Limine to Exclude Improper Inflammatory Terminology at Trial by Defense Counsel**

In this motion, plaintiffs seek an order prohibiting the use of the terms "crotch rocket" "bullet bike," "zipper bike,"or "donor cycle" instead of the terms "sport bike," 'sport motorcycle," "sport touring motorcycle," "Honda sport motorcycle," or "Honda sport touring motorcycle" to refer to Silva's motorcycle, by counsel and witnesses at trial any time before the jury. In arguing for this prohibition, plaintiffs contend that "improper term[s] . . . are used by Defense Counsel and defense witnesses solely to prejudice and pre-condition the jury. . . [and] [t]herefore, any mention of this terminology . . . will unfairly prejudice the Plaintiffs." Pltfs' Memo, Rec. Doc. 124-1, pp. 1-2. Counsel further argues that "[t]he terms [crotch] rocket, donor cycle, rocket bike, zipper bike or bullet bike [are] inflammatory and prejudicial. Id. at 4.

Defendants oppose the motion, arguing that slang terms are not inherently objectionable, and to require witnesses to substitute in new and formal terms when testifying, in place of the terms actually used in their previous depositions, would tend to make the witnesses appear coached and negatively affect their credibility.

Rule 402 of the Federal Rules of Evidence provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.

However, Federal Rule of Evidence 403 allows the court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The court notes that the terms "bullet bike" and "donor cycle" were not used by any witness in prior depositions, and defense counsel has represented that it does not intend to use them. Accordingly, the motion is denied as moot with respect to those terms, with the caveat that if witnesses invoke them at trial, a contemporaneous objection may be made, which the court will rule on in the context of trial.

As for the term "zipper bike," it does not strike the court as inherently pejorative, nor does the witness testimony related to it appear prejudicial. For instance, when witness Gayle Jenkins was asked in deposition how she would describe the motorcycle she saw before the crash, she stated "It was red, and it was what they call, I guess, a zipper bike. It's the term used for them. That's about it."[1] The witness is simply describing the bike as she understands it, using what is apparently a common term for that type of bike. No cases have been cited indicated that the term is prejudicial. Accordingly, the motion is denied with respect to the term "zipper bike."

As for the term "crotch rocket", plaintiffs' counsel has submitted two state court orders with their Reply excluding the use of the term "crotch rocket" as inflammatory,[2] as well as an

---

[1] Exh. P-73, Deposition of Gayle Jenkins 2:19-2:23.

[2] <u>Vanzyl v. Fain</u>, 2011 Fla. Cir. LEXIS 3861; <u>Meyette v. Am. Std. Ins. Co. of Wisconsin</u>, 2011 Colo. Dist. LEXIS 524.

order from Civil District Court for the Parish of Orleans excluding improper inflammatory terminology, which plaintiffs' counsel represents was based on a motion regarding the term crotch rocket.[34]

In contrast, there are numerous cases in which the term "crotch rocket" is used in testimony and by courts without any apparent controversy. See, e.g., People v. Koulakes, 2017 WL 192061(Ill. App. 4th Jan. 3, 2017); State v. Gaines, 2014 WL 1887659 (Ohio App. 6th May 9, 2014)(Explaining that "'crotch rocket' is a term used to describe a low profile, sport-style motorcycle, where the rider is required to lean forward while driving, as opposed to a touring-style cycle where the rider is in a more upright position."); Catlin v. City of Wheaton, 574 F.3d 361, 363 (7th Cir. 2009)(explaining that " '[c]rotch rocket' is apparently a slang term for a sport-motorcycle. The foot pegs and shifters on this type of motorcycle are placed farther back than usual, causing the rider to lean forward and assume an aerodynamic position."); State v. Heironimus, 356 P.3d 427, 429 (Kan. App. 2nd 2015); McCormick v. Tyrpa, 2003 WL 22234694, at *3 (Minn. App. Sept. 30, 2003); State v. Lewis, 2019 WL 4733469 (Ohio App. 6th Sept. 27, 2019). Granted, these cases do not present the question in the context of a fatal motorcycle accident being tried to a jury, though some present scenarios where perceived

---

[3] Rec. Doc. 141-4, Riley v. Harley Davidson, 2010-636, Civil Dist. Ct., Parish of Orleans (June 16, 2015).

[4] Plaintiffs' also submitted Exhibit A to their Reply, Rec. Doc. 141-1, which they purport to be ruling from a Florida state court prohibiting the use of the term "crotch rocket" as a prejudicial attempt to characterize the motorcycle involved as exceptionally fast. However, the document submitted is simply a motion by the plaintiffs in the Florida case seeking such a ruling; it does not include the court's ruling, nor could this court locate one.

recklessness is at issue (e.g., McCormick, supra, involved a custody dispute in which one parent was alleged to have transported the child on a crotch rocket at unsafe speeds; Lewis, supra, involved a motorcyclist shooting into a car, and the passenger testified her assailant was one on one of "15 to 20 crotch rocket motorcycles driving recklessly."). These cases do not serve as authority for the premise that the term "crotch rocket" is per se admissible. What they do suggest, however, is that the term is not per se prejudicial – while slang, it is used as a neutral descriptor in many contexts.

"An order in limine excludes only clearly inadmissible evidence; therefore, evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds." Auenson v. Lewis, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996). Because the evidence plaintiffs' seek to exclude is not clearly inadmissible on all potential grounds, the court declines to rule on this question in advance of trial without the opportunity to resolve the questions of foundation, relevance, and any potential prejudice in context. However, the court cautions counsel that if during trial they anticipate that a witness is preparing to use this or any other potentially inflammatory or prejudicial term, counsel should call it to the court's attention at the bench and the court will rule at that time. Accordingly, this motion is denied as premature.

3. **Motion in Limine to Suppress Statements, Testimony, and Affidavits of Witnesses Not Present at the August 25, 2018 Accident**

This is the second motion in limine in which plaintiffs seek to exclude the statements and affidavits of several witnesses who did not witness the actual accident, but who submitted statements concerning Silva's speed minutes before the accident, arguing that because they were

not present during the crash they have no relevant testimony to provide because they have no personal knowledge of the accident. The court previously held that evidence of Silva's speed and possible erratic driving (swerving out of his lane, and forcing other drivers out of theirs) in the minutes before the accident is potentially relevant to defendants' defense that Silva contributed to the accident by creating a sudden emergency, failing to maintain reasonable vigilance, failing to utilize the last chance to avoid the accident, and driving at an unreasonably dangerous rate of speed under the circumstances. See FED. R.EVID. 401. While it is true that none of the individuals personally knew Silva or could conclusively identify him, those are subjects for cross-examination that go to the weight the jury accords to the evidence.

Accordingly, this motion in limine is denied.

**4.      Defendants' Motion in Limine to Exclude Plaintiffs' Exhibit P-40.**

Defendants have moved to exclude plaintiffs' exhibit P-40, which consists of one 911 event report from the St. Tammany Parish Sheriff's Office, and six 911 audio recordings and the transcripts of those calls. Plaintiffs do not oppose the exclusion of exhibits P-40b, P-40bb, P40-e, and P-40 ee. Thus, remaining at issue are the 911 event report and the calls to 911, as well as the transcripts of the 911 calls. Defendant contends that the proposed exhibits are not authenticated, and the calls and transcripts, reporting the same accident, are cumulative.

Exhibit P-40 is a print out of the 911 event report, produced by the St. Tammany Parish Sheriff's Office. It is a a public record from the office where items of this kind are kept. As such, it meets the requirements for authenticity. See Fed R. Ev. 901(b)(7).

Plaintiffs contend that the the call recordings and transcripts for sub-exhibits P-40c and

P-40cc, P-40d and P-40dd, and P-40f and P-40ff (three individuals who called 911 from the accident scene) will be authenticated through the witnesses at trial, and their testimony will pertain to Silva's physical condition after the crash based upon their personal knowledge. Plaintiffs contend that the testimony is relevant to the plaintiffs' survival claim.

The court finds that the testimony is potentially relevant, and three brief 911 calls are not overly cumulative.

Finally, exhibit 40a is the recording and 40aa the transcript of the 911 call made from defendant Jennifer Robinson's cell phone immediately after the accident. Defendants seek to exclude the transcript because it is incomplete, and reflects that certain items which were audible on the tape are noted as inaudible and left blank on the transcript. In response, plaintiffs' counsel represents that he has made efforts to correct the transcripts. It is not clear from the record whether the corrections render the transcripts acceptable to defendants. However, if the parties are unable to stipulate to a transcript of the tape, the transcript will be excluded and the audiotape admitted as the best evidence of what is on the audiotape.

Accordingly, this motion is granted in part and denied in part, and exhibits P-40a, P-40c and P-40cc, P-40d and P-40dd, and P-40f and P-40ff are admissible. P-40aa is admissible provided a stipulation can be reached.

New Orleans, Louisiana, this   1st   day of June, 2020.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**