UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELISSA RIVERA, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-14005** |
| **JENNIFER ROBINSON, ET AL** | **SECTION: "S" (4)** |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that defendants' **Motion for Partial Summary Judgment** (Rec. Doc. 146) is **GRANTED**, and plaintiffs' claim that defendant Jennifer Robinson's prescription drug use was a cause of the accident is dismissed.

BACKGROUND

Detailed facts of this case, which stem from a motorcycle fatality that occurred when Jennifer Robinson turned into her driveway and collided with decedent, Ricardo Silva, Jr. have been set forth in prior orders of the court and thus are not restated here. Relevant to the present motion is the fact that plaintiffs have alleged that Robinson was impaired by her lawful use of prescription drugs, specifically Vyvanse (which treats ADHD and eating disorders) and Celexa (an antidepressant). Alternatively, they argue that her vision and motor skills were compromised because she had not taken Vvyanse for 72 hours prior to the accident.

Defendants have moved for partial summary judgment finding that Robinson was not impaired by either taking or failing to take the prescriptions. In support of their argument, they contend that plaintiff took her Celexa the night before the accident as prescribed, and the Vyvanse, which Robinson testified is prescribed for her as needed, 72 hours before. They further

point to extensive testimony by law enforcement that concluded she was not impaired, and the fact that she passed a breathalyzer test shortly after the collision.

Plaintiffs oppose the motion, arguing that a fact issue exists as to whether the drugs impaired Robinson, and whether such impairment contributed to the crash. In so arguing, they emphasize a Louisiana statute[1] that requires law enforcement to perform a chemical blood or urine test when there is a motor vehicle fatality, which was not done in this case. They also point to various warnings for each medication, which indicate that vision disturbances and loss of motor control are possible side effects of the medications. Finally, plaintiffs contend that because statements made by Robinson in a 911 call and to state troopers immediately after the crash regarding how it occurred did not coincide with accident construction reports, she must have been impaired.

Defendants have filed a reply, objecting to evidentiary materials attached to plaintiffs' opposition, arguing that they would not be admissible at trial. Specifically, they argue that the transcript of the 911 call is inadmissible because the court previously ruled that it would not be admitted absent a stipulation by the parties, which has not occurred. While the court held that

---

[1] La. Rev. Stat. 32:681. It provides:

A. The operator of any motor vehicle or watercraft which is involved in a collision or crash on the public highways, including waterways, shall be deemed to have given consent to, and shall be administered, a chemical test or tests of his blood, urine, or other bodily substances for the purpose of determining the presence of any abused substance or controlled dangerous substance as set forth in R.S. 40:964 or other applicable provision of law or any other impairing substance, under any of the following circumstances:

(1) A fatality occurs.

absent a stipulation concerning the transcript, the original recording could be admitted, plaintiffs did not submit the original recording. Defendants also take issue with various documents (a journal article, pharmaceutical inserts, Physicians' Digital Reference entries) submitted to explain drug interactions and adverse side effects of Vyvanse and Celexa, contending that they are hearsay, their provenance is unclear, and that they cannot be authenticated.

## DISCUSSION

*Standard of review*

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 477 U.S. 242 (1986).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The non-movant cannot satisfy the

summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

*Analysis*

To prevail on their claim that Robinson was negligent in taking or failing to take her medications, plaintiffs must prove at trial by a preponderance of the evidence that she was impaired by doing so or not doing so. They may do this via expert testimony, or by a totality of the circumstances. See Roberts v. CRST Van Expedited Inc., 2016 WL 3648276, at *2 (W.D. La. June 30, 2016) ("In cases where a positive alcohol test is not available, a driver's intoxication can be established by the totality of circumstances.") (citing Owens v. Anderson, 631 So.2d 1313, 1317-18 (La. App. 4 Cir. 1994). Because plaintiffs do not have an expert, they must demonstrate Robinson's impairment through a totality of the circumstances.

Defendants have introduced the deposition testimony of numerous law enforcement witnesses who, in combination, spent hours with Robinson following the accident. All of them concluded she was not impaired. The following assertions in this regard are excerpted from defendants' statement of uncontested facts,[2] and are not traversed by plaintiffs:

On the evening on Friday, August 24, 2018, Robinson took her prescribed antidepressant,

---

[2] Defendants' Statement of Uncontested Facts, Rec. Doc. 146-1, ¶¶ 7-19.

Celexa. Within the 72 hours prior to motor vehicle accident that is the subject of this suit, Robinson took her prescribed Vyvanse.

After the accident, Robinson was examined by EMT Nicholas Ziegler. Ziegler testified that Robinson was not disoriented, and she did not have an altered mental state, and was not impaired. If she had been impaired, Ziegler state that he could not have completed his assessment.

Lieutenant Rickie Guhman was the supervising state trooper at the scene of the accident. A 22-year veteran of the Louisiana State Police with training in DWI detection, Lieutenant Guhman did not observe any signs that Robinson was impaired.

Senior Trooper Paul Strickland immediately read Robinson her rights. He then spent 45 to 60 minutes with Robinson and never detected any signs that she was impaired. Senior Trooper Strickland testified that Jennifer Robinson agreed to provide a breath sample and was cooperative with the Louisiana State Police's investigation. Senior Trooper Strickland did not have probable cause to obtain a search warrant for Jennifer Robinson's urine or blood.

Trooper David Levy is a former Board Certified Nurse Practitioner and Certified Drug Recognition Expert. He is trained to evaluate drivers who the state police believe are impaired, but who do not cross the .08 Blood Alcohol Content (BAC) threshold. On August 25, 2018, Trooper Levy was with Robinson for at least two hours. He transported her to Troop L, administered the breath test, and sat with her while she wrote her statement for the police report. Trooper Levy did not believe that Robinson was impaired by alcohol, illegal drugs, or prescription drugs.

In response,[3] plaintiffs contend that Robinson did not take her Vyvanse as prescribed, because the instructions direct a daily dose, whereas Robinson testimony was that she took it as needed, and she had last taken it 72 hours prior to the accident. Plaintiffs also claim that Robinson did not read or adhere to the warnings related to the medications, which have been documented to cause blurred vision in some cases. They emphasize that law enforcement did not administer a blood or urine test after the accident. Plaintiffs also state that leading to the crash, Robinson was driving fifteen miles above the speed limit, aggressively, turned quickly, and did not use her turn signal when entering her driveway. Plaintiffs also argue that because some of Robinson's post-accident statements are at odds with accident reconstruction report conclusions, she must have been impaired.

To prevail on the prescription medication impairment claim, plaintiffs must show that Robinson was taking (or not taking as directed) the medications, and that as a result, Robinson was impaired in the manner they suggest: either experiencing blurred vision or loss of motor control, and that the impairment contributed to the accident. As for the first question, whether and how she was taking the medications, it is not at issue. Robinson fully admits she was taking the medications, and when she had last taken them. For this reason, plaintiffs' argument concerning the failure of law enforcement to conduct a blood test is a red herring – because Robinson fully admits her use of Celexa and Vyvanse, an administration of a chemical test that would reveal the presence of these substances in her body would add no new information.

Thus, plaintiffs must show that Robinson was impaired. All of the evidence submitted by

---

[3] Rec. Doc. 163-1, Plaintiffs' Statement of Contested Material Facts.

individuals who were in a position to closely observe her, indicates that Robinson was not impaired. All of the law enforcement officers involved, who had extensive training in determining impairment, determined Robinson was not impaired. Trooper Levy, a certified drug recognition specialist who specially qualified to determine if an individual who passes a .08 BAC screening is nevertheless impaired, spent over two hours with Robinson and concluded she was not impaired.

Pretermitting the question whether the supporting evidence submitted by plaintiffs is admissible, plaintiffs' response does not adequately rebut this evidence. While plaintiffs argue that warnings associated with the medicines indicate that in rare instances they can cause visual disturbances and/or loss of motor control, that does not get them over the goalpost. The fact that medications can do so in some cases is not evidence that it occurred in this case. Moreover, the assertion by defendants that Robinson was driving fifteen miles above the speed limit, aggressively, turning quickly, and did not use her turn signal when entering her driveway is also inadequate. Even if true, there are numerous potential reasons besides impairment by prescription drugs that might cause a person to drive in the fashion alleged, including simply being in a hurry. As the Fifth Circuit observed in an insurance coverage case in which the plaintiff's husband's intoxication while driving would result in a coverage exclusion, "the mere failure to negotiate a right-hand turn on a highway is not, on its own, sufficient to support a rational conclusion that the driver was intoxicated while driving." White v. Life Ins. Co. of N. Am., 892 F.3d 762, 771 (5th Cir. 2018), as revised (June 14, 2018).

Likewise, the fact that Robinson's perception of how the accident occurred does not

7

coincide with that of the accident reconstruction reports, is not proof of impairment. In their memorandum, plaintiffs argue: "Given Defendant Robinson's erratic maneuvers and audio recorded statements after the crash, Plaintiff has reason to believe that Defendant Robinson was distracted and/or drug impaired." Rec. Doc. 163, p. 13. Thus, plaintiffs themselves acknowledge an equally plausible alternative explanation for the complained of driving behavior – that Robinson was distracted.

Defendants have identified extensive evidence from a totality of the circumstances – in the form of the deposition testimony of trained law enforcement officers who spent hours with Robinson following the accident and who were charged with determining whether she was impaired -- that Robinson was not impaired. Plaintiffs have produced no countervailing *evidence*. They have not brought forward a single individual who encountered Robinson in the relevant time period who has stated that she appeared to be impaired. The court thus finds that plaintiff cannot meet their burden on an essential element of their prescription drug impairment claim: that Robinson was impaired and that the impairment caused the accident. Accordingly,

**IT IS HEREBY ORDERED** that defendants' **Motion for Partial Summary Judgment** (Rec. Doc. 146) is **GRANTED**, and plaintiffs' claim that defendant Jennifer Robinson's prescription drug use was a cause of the accident is dismissed.

New Orleans, Louisiana, this 19th day of June, 2020.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**