UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELISSA RIVERA, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-14005** |
| **JENNIFER ROBINSON, ET AL** | **SECTION: "S" (4)** |

ORDER AND REASONS

    **IT IS HEREBY ORDERED** that defendants' **Motion in Limine to Exclude Evidence** of defendant Jennifer Robinson's eye examinations, treatment, and surgeries that occurred after the date of the motor vehicle accident (Rec. Doc. 158) is **GRANTED in part** to the extent that all post-accident medical records are excluded; **DENIED in part** to the extent that evidence that Dr. Gremillion recommended a yag capsulotomy is allowed; and **DENIED in part as premature** to the extent that the evidence may be used as impeachment.

    **IT IS FURTHER ORDERED** that plaintiffs' **Motion in Limine to Exclude Evidence** of an irrelevant Instagram video (Rec. Doc. 165) is **GRANTED,** except to the extent that the evidence may be used as impeachment, subject to proper authentication;

    **IT IS FURTHER ORDERED** that plaintiffs' **Motion in Limine** to use government statistics and argue tenets of tort law (Rec. Doc. 166) is **DENIED**.

BACKGROUND

    This matter arises out of a motor vehicle accident that occurred on August 25, 2018 in Covington, Louisiana. Plaintiffs' son, Ricardo Silva, Jr., died from injuries sustained in the accident when the motorcycle he was driving collided with defendant Jennifer Robinson's SUV.

Plaintiffs allege the accident was caused by Robinson's negligence; defendants contend that Silva was speeding at the time of the accident, which caused or contributed to the accident. The following motions in limine seek a ruling in advance of trial to exclude or allow certain evidence.

## DISCUSSION

1.     *Defendants' Motion in Limine to Exclude Evidence of defendant Jennifer Robinson's eye examinations, treatment, and surgeries that occurred after the date of the motor vehicle accident.*

Jennifer Robinson had cataract surgery on May 18, 2018, performed by Dr. Satya Reddy. She had several post-operative visits with him, as well as a follow up with Dr. Avit "Frere" Gremillion, her ophthalmologist who had referred her to Dr. Reddy. The followup visit with Dr. Gremillion took place on August 9, 2018, approximately two weeks prior to the accident in this case. At that visit, her vision was 20/30 in her right eye, and 20/40 in her left eye, a visual acuity level that permitted Robinson to have an unrestricted driver's license. At the same visit, Dr. Gremillion saw some "haze" in Robinson's left eye, and informed her that she would need a yag capsulotomy procedure in that eye. The next eye doctors' records submitted are from November 6, 2019, when Robinson saw Dr. Reddy, who recommended the yag capsulotomy procedure on that date, and performed it on December 11, 2019. In the intervening period, on July 29, 2019, Robinson renewed her driver's license which was issued with three restrictions: corrective lenses; left outside rearview mirror; and vision loss left.

Defendants have filed the instant motion in limine seeking to exclude evidence of Robinson's visual acuity and license restrictions after the August 25, 2018 accident as irrelevant,

or alternatively, as more prejudicial than probative. Plaintiffs argue that the evidence is relevant to show that Robinson's vision fluctuated over time, and more often than not, was below DMV standards for driving.

Defendants do not challenge the admissibility of the pre-accident medical records, which are clearly relevant considering that there are records dating from just two weeks prior to the accident. However, because all of the post-accident records and the license restrictions date from nearly a year after the accident or even later, they are too attenuated in time from the accident and therefore not relevant. As for plaintiffs' contention that all records, including post-accident records, must come in to demonstrate the fluctuations in Robinson's visual acuity over time, records from a year after the accident do not establish a pattern of fluctuation, but rather provide a snapshot a year after relevant events. As such they are inadmissible.

Defendants also seek to exclude evidence that Dr. Gremillion informed Robinson on August 9, 2018 that she would need a yag capsulotomy due to "visually significant P[osterior] C[apsular] H[aze]." They argue that because Dr. Gremillion does not perform that particular procedure, he is not qualified to opine on it. However, in this case, Dr. Gremillion was Robinson's treating ophthalmologist, and the testimony defendants seek to exclude are his impressions of his patient upon examination, and her likely course of needed treatment. The fact that he would refer his patient to another doctor for that treatment does not mean he was not qualified to diagnose her need for it. Defendants will have the opportunity to test his reliability and credibility on cross-examination, but there is no basis to isolate and exclude this particular piece of pre-accident evidence regarding Robinson's vision.

Defendants also seek to exclude evidence of the fact that Robinson did ultimately receive the yag capsulotomy procedure in December 2019, on the basis that it must be excluded as a subsequent remedial measure. See FED. R. EVID. 407. Because the court has already excluded post-accident medical records on the basis of relevance, this portion of the motion is moot, to a large extent.

However, plaintiffs counter that it is admissible as impeachment evidence, because Robinson testified at her deposition that she did not have any physical vision problems. It is not entirely clear from Robinson's deposition testimony whether that was her testimony. In that exchange, at her January 6, 2020 deposition, plaintiffs' counsel asked Robinson, if, in addition to the requirement that she wear contacts and glasses following the July 29, 2019 re-issuance of her license: "[D]o you have any other physical vision problems or anything? Did they[1] tell you anything?" Robinson responded, "No, sir."[2] Arguably, Robinson is not denying prior vision problems, but asserting that she was experiencing none as of that moment because they had been resolved by her procedure the month before. However, the court finds that this question is more properly resolved within the context of trial, and thus, to the extent the evidence may be used for impeachment purposes, the motion to exclude it is denied as premature. Accordingly, defendants' motion in limine to exclude evidence of defendant Jennifer Robinson's eye examinations, treatment, and surgeries that occurred after the date of the motor vehicle accident is granted to

---

[1] It is unclear from the context whether "they" refers to officials at the DMV or to the doctor she saw for a checkup in connection with the re-issuance of her license

[2] Jennifer Robinson Depo, Rec. Doc. 158-2, 12:22-25.

the extent that all post-accident medical records are excluded; denied to the extent that evidence that Dr. Gremillion recommended a yag capsulotomy is allowed; and denied in part as premature to the extent that the evidence may be used as impeachment.

2.     ***Plaintiffs' Motion in Limine to Exclude Evidence of an irrelevant Instagram video.***

Plaintiffs seek an order excluding a video that shows an individual riding a motorcycle and doing a "wheelie." Defendants contend that the video was taken by the decedent, Ricardo Silva, Jr., on or before July 30, 2018, the date it was posted to an Instagram account purportedly controlled by the decedent. The video has not been provided to the court, but still images from the video have been attached to the defendants' opposition. One still image depicts what appears to be a speedometer, on a motorcycle with a red fairing, registering 110 miles per hour.

Plaintiffs argue that the video should be excluded as irrelevant because it was not taken on the date of the accident, the decedent is not pictured in the video, and it is uncertain who took the video. Defendants counter that "the video in question is relevant because it is circumstantial evidence the Mr. Silva was speeding on the day of the accident."[3]

The court finds that the video is not circumstantial evidence that Silva was speeding on the date of the accident, because the accident occurred approximately three weeks after the latest date the video could have been taken. The video does not depict the decedent, and the fact that it appears on his Instagram page does not necessarily mean that he filmed it. Even if it were established that the decedent took the video, to the extent it is offered to show that the decedent was the type of person who operated a motorcycle carelessly on another occasion, it is

---

[3] Rec. Doc. 183, p. 6.

inadmissible character evidence. See FED. R. EV. 404(a)(1).

Defendants also contend that the video is alternatively admissible for impeachment purposes, in the event that there is trial testimony that Silva was always a safe rider. Outside the context of trial, a ruling on that basis is premature. However, the court cautions defense counsel that it will have to authenticate the video, and as the court understands it, the defendant would have been able to post a video sent to him by anyone to his Instagram account, so the fact that it appeared there does not mean he recorded it. Similarly, presence of a red fairing on the motorcycle of the person filming the video is inconclusive, because it's not impossible that decedent traded bikes with another individual for part of the ride. Thus, authenticating the video and proving that it was actually taken by the decedent may present a challenge.

Accordingly, this motion is granted in all respects except to the extent the evidence may be admissible as impeachment; to that extent it is denied as premature.

3. ***Plaintiffs' Motion in Limine to use government statistics and argue tenets of tort law.***

In this motion, plaintiffs seek an order allowing them to admit statistics concerning intersection crashes to the jury. Specifically, they request the court to take judicial notice of a report entitled "U.S. Department of Transportation: National Highway Traffic Safety Administration September 2010 Crash Factors in Intersection -Related Crashes: An On-Scene Perspective (hereinafter, "DOT Report"), and allow them to introduce it to the jury. Defendants oppose, contending that it would be improper for the court to take judicial notice of a statistical study that doesn't address adjudicative facts in this case.

Under Federal Rule of Evidence 201, a court may take judicial notice of an "adjudicative

fact" if the fact is "not subject to reasonable dispute" because it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. Doe v. Mckesson, 945 F.3d 818, 833 (5th Cir. 2019) (citing Fed. R. Evid. 201(b)). "'Rule 201 authorizes the court to take notice only of 'adjudicative facts,' not legal determinations.'" Id. (quoting Taylor v. Charter Med. Corp., 162 F.3d 827, 831 (5th Cir. 1998)).

An adjudcative fact is a "controlling or operative fact, rather than a background fact; a fact that is particularly related to the parties to a proceeding and that helps the tribunal determine how the law applies to those parties. For example, adjudicative facts include those that the jury weighs." BLACK'S LAW DICTIONARY (11th ed. 2019). "Adjudicative facts are simply the facts of the particular case." Wood v. Stephens, 619 F. App'x 304, 310 n. 3 (5th Cir. 2015).

The gravamen of plaintiffs' argument for admitting the DOT Report is that this evidence is relevant because it goes to the question of foreseeability – that is, the DOT Report tends to show, based on statistics from other cases, that it is foreseeable that a left hand turn such as the one made by defendant Robinson in this case would result in the injuries suffered by the decedent. However, foreseeability in that sense is not at issue in this case. It is not disputed by any party that a negligent left hand turn into oncoming traffic could or would cause the injuries at issue in this case. At issue is whether in this case the turn was negligent under all the circumstances, and whether the decedent was contributorily negligent. Accordingly, the DOT Report referenced does not tend to prove any relevant adjudicative facts. The motion to allow its introduction to the jury is therefore denied. Accordingly,

**IT IS HEREBY ORDERED** that defendants' **Motion in Limine to Exclude Evidence** of defendant Jennifer Robinson's eye examinations, treatment, and surgeries that occurred after the date of the motor vehicle accident (Rec. Doc. 158) is **GRANTED in part** to the extent that all post-accident medical records are excluded; **DENIED in part** to the extent that evidence that Dr. Gremillion recommended a yag capsulotomy is allowed; and **DENIED in part as premature** to the extent that the evidence may be used as impeachment.

**IT IS FURTHER ORDERED** that plaintiffs' **Motion in Limine to Exclude Evidence** of an irrelevant Instagram video (Rec. Doc. 165) is **GRANTED,** except to the extent that the evidence may be used as impeachment, subject to proper authentication;

**IT IS FURTHER ORDERED** that plaintiffs' **Motion in Limine** to use government statistics and argue tenets of tort law (Rec. Doc. 166) is **DENIED**.

New Orleans, Louisiana, this   19th   day of August, 2020.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**