UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELISSA RIVERA, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-14005** |
| **JENNIFER ROBINSON, ET AL** | **SECTION: "S" (4)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the plaintiffs' *Daubert* **Motion** to limit the testimony of Michael DiTallo (Rec. Doc. 272) is **GRANTED in part**, insofar as DiTallo may not testify concerning the statements of certain witnesses as set forth herein; in all other respects, the motion is **DENIED**.

### BACKGROUND

This matter arises out of a motor vehicle accident that occurred on August 25, 2018 in Covington, Louisiana. Plaintiffs' son, Ricardo Silva, Jr., died from injuries sustained in the accident when the motorcycle he was driving collided with defendant Jennifer Robinson's SUV. Plaintiffs allege the accident was caused solely by Robinson's negligence, while defendants contend that Silva's speed at the time of the accident caused or contributed to the accident.

Plantiffs have now moved to exclude the testimony of defendant's expert witness, Michael DiTallo ("DiTallo"). Plaintiffs argue that DiTallo's conclusions are erroneous, and that these errors undermine his opinion to such a degree that it is unreliable and should be excluded. Defendants counter that the errors identified by plaintiffs are not errors at all, and that plaintiffs' issues with DiTallo's opinion go to the weight of the opinion rather than its admissibility.

## DISCUSSION

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

In Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589 (1993), the Supreme Court of the United States held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." To perform its gatekeeping function, the court must first determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the court to assess whether the reasoning or methodology underlying the expert's testimony is valid. See Daubert, 509 U.S. at 592-93. The goal is to exclude expert testimony that is based merely on subjective belief or unsupported speculation. See id. at 590. However, challenges to which scientific methodology is chosen, or "'questions relating to the bases and sources of an expert's opinion[,] affect the weight to be

assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" United States v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting Viterbo v. Dow Chem. Co., 826 F.2d 420, 422 (5th Cir. 1987)). Next, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, i.e. whether it is relevant. See Daubert, 509 U.S. at 591.

**Testimony of Michael DiTallo**

Michael DiTallo is defendants' retained accident reconstruction expert witness. Plaintiffs argue that DiTallo: (1) improperly calculated the speed of the motorcycle from impact to rest ("post-impact speed"), (2) improperly calculated the motorcycle speed at impact, (3) inaccurately modeled the accident in the software PhotoModeler, and (4) speculates based on allegedly unreliable eyewitness testimony. Plaintiff also argues that DiTallo's invoices are so large that it implies that he is being paid to provide an erroneous opinion for defense.

**A.     Post-Impact Speed**

Plaintiffs concede that the methodology that DiTallo used for calculating post-impact speed was correct. They allege, however, that DiTallo used incorrect drag factors (also called coefficient of friction), used the wrong measurements, and relied on a publication that was not peer-reviewed. They further allege that the data contained in the publication that DiTallo used is outdated and inapplicable to this case. Thus, on their face, plaintiffs' objections relate to the bases and sources of DiTallo's opinions.

For instance, plaintiffs take issue with the drag factor used by DiTallo, which DiTallo selected based on the theory that different drag factors apply in cases in which a motorcycle tumbles, rather than slides, to rest. DiTallo noted that he did not observe any evidence on the road or damage on the side of the motorcycle indicating the motorcycle traveled on the road surface, and observed damage to the center and left triple clamp of the motorcycle consistent with it impacting the roadway, not the Acura. As a result, he concluded that the motorcycle tumbled rather than slid, and used a drag factor applicable to tumbling motorcycles, determining that it best matched the circumstances of this case.

The drag factor chosen was the product of tests conducted by the Institute of Police Technology and Management, listed in a textbook referred to as the "Baxter book." According to DiTallo, the chapter of the book he relied upon for his drag factor was peer-reviewed by a professional engineer and the book was referenced in at least one peer reviewed journal.

As for the complained of measurement, plaintiffs acknowledge that DiTallo's measurement from impact to rest, 54 feet, is correct, but contend he should have used a shorter measurement in his calculation to account for the gap between the point of impact and where the motorcycle hit the pavement. However, DiTallo used the 54-foot measurement, because, as discussed above, his opinion differs from plaintiff's expert on the mechanics of the accident after the impact. This choice represents a disagreement on which data to use, not on the methodology itself. This testimony is not based merely on subjective belief or unsupported speculation, but rather demonstrates sufficient indicia of reliability to satisfy Rule 702.

**B.      Speed at impact**

Plaintiffs also contend that DiTallo's calculation of the speed of the motorcycle at impact is unreliable. Plaintiffs do not challenge the underlying validity of DiTallo's use of a rotational analysis for this calculation, nor do they dispute the particular formula that DiTallo uses. Rather, plaintiffs argue that DiTallo has mischaracterized oil spray as tire marks and used incorrect inputs (by using a different angle of the motorcycle and length of moment arm than plaintiffs' expert) in his rotational analysis formula.

Again, these are challenges to the bases of the opinion, not the validity of the methodology. DiTallo simply disagrees with plaintiffs' expert, James Evans', characterization of the photos of road markings. DiTallo contends the disputed markings are from a tire, and Evans believes they are from oil deposits. DiTallo provides several reasons why he believes the disputed markings are from a tire and not oil, stating, for example, that what Evans argues is oil spray perfectly follows the line that the tires would have traveled when the motorcycle struck it, and that it would be physically impossible for the fluid to have been deposited in that manner. DiTallo also argues that a photo of the tire shows dirt, not oil as Evans claims. In addition, DiTallo emphasizes that some of the tire marks likely faded quickly, and, considering that DiTallo took photographs first, this could explain the differences between DiTallo's and Evans' conclusions about tire marks.

All of the additional criticisms of DiTallo's opinion on speed at impact – concerning the post-impact departure angle used in the rotational analysis, and the inputs for the PhotoModeler

5

software – flow from this difference of opinion. DiTallo begins with a different assumption regarding the disputed markings, and thus reaches a different result. However, there is nothing to suggest that the reasoning or methodology underlying his testimony is invalid, and thus inadmissible.

**C. Use of PhotoModeler**

In addition to taking issue with the inputs for the PhotoModeler software, plaintiffs allege that DiTallo incorrectly used the software. This argument is based on their assumption that DiTallo utilized the software by using the "manual marking" method. As noted by defendants in their opposition, DiTallo did not use the "manual marking" method, and thus plaintiffs' critique is not on point. Rather, DiTallo used a generally accepted method that requires five control points, and he used five control points. Thus, there is no basis to exclude DiTallo's opinions because he utilized a different (but generally accepted) methodology than plaintiff's expert would have utilized.

In conclusion, on the record before the court, the court cannot find that the reasoning or methodology underlying DiTallo's testimony is invalid. It is not based upon subjective belief or unsupported speculation. Plaintiffs' challenges, which go to the scientific methodology chosen (in the case of the PhotoModeler software), or relate to the bases and sources of DiTallo's opinions (in the case of the speed at impact and post-impact speed), "affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." United States v. 14.38 Acres of Land, 80 F.3d at 1077 (internal quotations omitted). Cross-

examination is the place to explore these challenges.

**D.      Eyewitness Testimony**

In his report, DiTallo summarizes the testimony of certain individuals who did not actually witness the actual crash, but claim to have seen a speeding motorcycle matching the description of Silva's motorcycle on the same highway where the accident occurred in the minutes leading up to the accident. Specifically, DiTallo states:

> [D]eposition testimony [was provided] from a number of individuals who had seen a motorcycle similar to that involved in this crash that was speeding in the area prior to the incident occurring. Witness Barry Haas stated the motorcycle was approaching them on LA 1082 north of the crash scene and was "flying" and encroached into his lane. He had moved over to the far-right edge to keep away from the motorcycle and watched as it passed by next to his vehicle. His wife and passenger, Terry Haas, stated the same and estimated the motorcycle speed to be in excess of 100 mph. Witness Arlen Jenkins was leaving his house along LA 40 north and east of the crash site and witnessed a motorcycle he believed to be the same one pass by him going westbound. He estimated its speed to be 100 mph. He had seen this bike or a very similar one many times before, but he has not seen it since the crash occurred. His wife and passenger, Gayle Jenkins, also stated it had been travelling very fast and had seen this bike or a similar one many times before but has not seen it since that day. Witness Denise Pichoff had not seen the motorcycle that day but had seen one matching its description many times prior to that day. She stated sometimes she had seen it 2-3 times a day driving very fast past her home. After the crash she did not see the speeding motorcycle anymore.

DiTallo Report, Rec. Doc. 272-12, pp. 19-20.

Based on this characterization of the testimony, DiTallo's report concludes:

> 15. Based on my analysis and review of available information, the motorcycle involved in this incident is likely the same as the reported motorcycle seen by the deposed witnesses (Mr. and Mrs. Haas, and Mr. Jenkins).

Id. at p. 24.

Plaintiffs argue that DiTallo presents the witnesses' testimony as fact, and by including the testimony in his expert report, has passed on the credibility of those witnesses and usurped the role of the jury by "determining issues of material fact." Defendants counter that DiTallo did not use these statements in his analysis of Silva's speed at impact, but merely to corroborate his scientific conclusions that he arrived at independently.

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Thus, simply because DiTallo opines, after reciting the witnesses' testimony, that "the motorcycle involved in this incident is likely the same as the reported motorcycle seen by the deposed witnesses (Mr. and Mrs. Haas, and Mr. Jenkins)," does not make it per se inadmissible. However, a threshold inquiry for admissibility of expert testimony is whether "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Testimony that merely corroborates an opinion is by its nature duplicative, and potentially cumulative to a degree that is unhelpful. That is the case here.

The court has previously ruled that the testimony of individuals who saw Silva speeding or driving erratically in the minutes before the accident is admissible, and they are expected to testify at trial. See Rec. Doc. 154. Expertise is not required to determine whether or not to credit their testimony. The jury will be able to observe the witnesses and draw their own conclusions about their trustworthiness. Simply put, DiTallo's expertise in accident reconstruction will not

help the jury evaluate the testimony of individuals who claim to have seen him in the minutes before the accident. Accordingly, the court finds that the portion of DiTallo's report summarizing the testimony of witnesses who will appear at trial should be redacted from his report, and he may not testify to it at the trial of this matter.

### E.    Other Arguments

Finally, plaintiffs argue that DiTallo's "exorbitant" invoices imply that he is being paid to provide an erroneous opinion for defense. All retained experts are compensated, and plaintiff's memorandum cites to no legal authority for the proposition that the price tag may serve as a basis to disqualify an expert. Thus, this argument does not provide a basis for excluding DiTallo's testimony, and accordingly,

**IT IS HEREBY ORDERED** that the plaintiffs' *Daubert* **Motion** to limit the testimony of Michael DiTallo (Rec. Doc. 272) is **GRANTED in part**, insofar as DiTallo may not testify

concerning the statements of certain witnesses as set forth herein; in all other respects, the motion is **DENIED**.

New Orleans, Louisiana, this 11th day of December, 2020.

        **MARY ANN VIAL LEMMON**
        **UNITED STATES DISTRICT JUDGE**